UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LEROY SMITH, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:10-CV-263-PRC |
| ) | |
| WINDMILL ENVIRONMENTAL, ) | |
|     Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment [DE 30], filed by Defendant Windmill Environmental, on December 1, 2011. For the reasons set forth below, the Court grants the Motion for Summary Judgment.

**PROCEDURAL BACKGROUND**

On June 29, 2010, Plaintiff Leroy Smith, pro se, filed an "Employment Discrimination Complaint" in this Court against Windmill Environmental. In Section II of the form Complaint, titled "Basis of Claim and Jurisdiction," Smith checked the Age Discrimination in Employment Act, 29 U.S.C. § 621. In the facts section, he alleges that he "lost a waste manifest which is a violation of D.O.T. Rules & Regulations. A Co employee delivered hazard waste on the wrong manifest which is also a violation of D.O.T. regulation. He being white." (Docket entry 1).

On January 13, 2011, Windmill Environmental filed a Motion to Dismiss for Improper Service, which was denied by District Court Judge William C. Lee on February 16, 2011.

Windmill Environmental filed its answer on March 10, 2011.

On April 14, 2011, the parties orally agreed on the record to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final

judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

On December 1, 2011, Windmill Environmental filed the instant Motion for Summary Judgment, a Brief in Support of Motion for Summary Judgment, the deposition of Plaintiff, the Affidavit of Jerry Dykstra, and the Affidavit of Holly Saffran-Allshouse. On December 6, 2011, Windmill Environmental filed its Notice of Summary Judgment Motion pursuant to *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992), indicating service on Smith.

On December 28, 2011, Smith filed an unsworn response brief and no supporting evidence.

Windmill Environmental filed a reply brief on January 3, 2012.

On January 18, 2012, Smith filed an "Appendix Reply in Support of Responsive Brief Opposing Defendant Motion for Summary Judgment."

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party."

*Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

Plaintiff Leroy Smith is an African American man who was employed by Windmill Environmental as a "lead driver" hauling specialized waste materials from USX (also referred to as "U.S. Steel") in Gary, Indiana, to a licensed disposal site operated by the Environmental Quality Company ("EQC") in Detroit, Michigan. As "lead driver," Smith was responsible for the USX account and was paid more than the other drivers. USX was Windmill's biggest customer, and

maintaining a good business relationship with USX was critical to Windmill's survival and success. Windmill disposed of environmental dust for USX.

Jerry Dykstra, the Chief Executive Officer of Windmill Environmental, states in his Affidavit that transporting these materials is governed by federal law, which he states requires that each load be accompanied by a manifest identifying the material being disposed of. He further stated that it is illegal to transport this waste without the appropriate manifest, which serves to inform public authorities about necessary safety measures in the event of an accident or spill. Dykstra explained that, if any of these hazardous materials are spilled, it is considered hazardous waste and an EPA-approved cleanup is required.

On December 5, 2008, Windmill Environmental driver Jeff Kinley transported two loads of dust from USX to EQC. The manifest provided by Windmill Environmental to Kinley misidentified the contents of the load. When Kinley arrived at EQC, the error was discovered; off-loading was delayed until a new, accurate manifest was prepared by Windmill Environmental and approved by USX. The error with the manifest was not Kinley's alone; other Windmill Environmental employees contributed to the error. Dykstra states that, because this documentation error was a Department of Transportation violation, Kinley was written up by Windmill Environmental.

To address this error, USX called a December 31, 2008 meeting, attended by Thee Sandidge of USX's environmental department; Edwin Baron, Operations Manager of Windmill Environmental; Dykstra, CEO of Windmill Environmental; Holly Saffran-Allshouse, a Windmill Environmental dispatcher; and Smith, Windmill Environmental's "lead driver" for the USX account.

At the meeting, Sandidge advised the Windmill Environmental representatives that Windmill Environmental's contract with USX was in jeopardy because of problems with manifests. He stated

that Windmill Environmental would have to remedy the documentation problems or the contract could be terminated.

As a result of this meeting, it was decided that Windmill Environmental drivers would be individually and primarily responsible for verifying and ensuring that the proper manifest accompanied each load at all times. Smith participated in the discussions leading to this resolution. All drivers were advised of this new policy, which was reduced to writing.

On January 5, 2009, Smith drove a load of dust from Gary to EQC in Detroit. Upon arrival, it was discovered that he had no manifest for the load. This led to another meeting with Sandidge, who voiced his displeasure with the documentation error, particularly in light of the previous meeting in which Smith had participated.

The January 5, 2009 incident was the fault solely of Smith.

As a result of this error, Windmill Environmental terminated Smith's employment. After his termination, Smith's position as lead driver was filled by Louis Brown, an African American.

Dykstra states in his Affidavit that race played no part in Smith's termination.

Although Smith checked the box for age discrimination in his preprinted form Complaint, in his deposition, Smith stated in his deposition that he is seeking damages in this lawsuit based only on race discrimination.

**ANALYSIS**

Windmill Environmental seeks summary judgment in its favor on Smith's claim of race discrimination under the indirect method, arguing that Smith and his purported comparator, Jeff Kinley, were not directly comparable in all respects, that Smith cannot establish he was meeting his employer's legitimate expectations because he violated a clear company policy and legal obligation

by transporting hazardous waste without the appropriate manifest under circumstances he knew jeopardized his employer's largest account, and that Windmill Environmental terminated Smith because of a legitimate business reason that Smith cannot show to be pretextual.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). To survive summary judgment on a race discrimination claim under Title VII, a plaintiff must present either direct or indirect evidence of discriminatory intent. *Cerruti v. BASF Corp.*, 349 F.3d 1055, 1060-61 (7th Cir. 2003). Smith has offered no direct evidence of race discrimination; therefore, the Court proceeds under the indirect method. Under the indirect, burden-shifting method, a plaintiff must establish a presumption of discrimination through a prima facie case of discrimination, which requires a showing (1) that he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered a materially adverse employment action; and (4) the employer treated similarly situated employees outside the protected class more favorably. *Atanus v. Perry*, 520 F.3d 662, 672-73 (7th Cir. 2008) (citing *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004)). If the plaintiff establishes this presumption, the burden shifts to the employer to rebut the prima facie case of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* (citing *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1290 (7th Cir. 1997)). If the employer satisfies this burden of production, the burden shifts back to the plaintiff to show that the employer's reasons "are false and only a pretext for discrimination." *Id.* (same).

First, Smith cannot demonstrate that a similarly situated employee, comparable in all respects, was treated differently. "The similarly-situated analysis calls for a 'flexible, common-sense' examination of all relevant factors." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (quoting *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007)). The purpose of this prong is to rule out other explanations for the employment action, "'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'–discriminatory animus." *Id.* at 846 (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)). "In the usual case, a plaintiff must at least show that the comparators (1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Id.* at 847 (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (quoting *Snipes v. Illinois Dep't of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002))). However, these categories are not a "magic formula," and this inquiry should be flexible under the circumstances of each case. *Id.*

Smith has identified Jeff Kinley as his comparator. Kinley, who is Caucasian, was disciplined for failing to possess a manifest with accurate information on December 5, 2008. In contrast, Smith, who is African American, was terminated for failing to have a manifest for his load on January 5, 2009. In his response brief, Smith argues that the responsibilities and "confirmation of proper entries, codes, and [handling] of manifest are the same for Leroy Smith (plaintiff) and driver Jeff Kinley." Pl. Resp., p. 2. In his "Appendix Reply", which is essentially a surreply to Windmill Environmental's reply brief, Smith asserts that there is a genuine dispute as to the comparison of Kinley and Smith because both are regulated by the same Federal Motor Carrier

8

Safety Rules, both were in violation of manifest procedures, both could have been cited along with the company for their violations, and both were the last handler of the documents before transport.

Nevertheless, Smith and Kinley were not similarly situated for purposes of a prima facie case because they held different positions, the incidents in which they were involved were materially different, and their individual responsibility for each incident was different. First, Kinley was a driver, whereas Smith was a "lead driver." As lead driver, Smith was Windmill Environmental's "point man" with respect to the USX account. Smith was given the additional responsibilities of "lead driver" because of his experience and qualifications. Smith testified that he "could put hands on all operations of that company." (Smith dep., p. 6, ll. 7-8). A reflection of Windmill Environmental's expectations of Smith as "lead driver" was his inclusion in the meeting with USX to address the Kinley incident.

Second, the incidents for which Kinley and Smith were disciplined were materially different. Kinley's incident occurred on December 5, 2008, before the meeting at which USX announced its newly-focused insistence that Windmill Environmental's drivers take primary responsibility for ensuring that a proper manifest accompany each load. At that meeting, which Smith attended, Sandidge of USX expressed USX's irritation with the Kinley incident and stressed that Windmill Environmental's drivers were expected to verify that they had proper manifests before leaving USX with a load. Sandidge made it clear that the future relationship between Windmill Environmental and USX was contingent upon Windmill Environmental's drivers following this policy. Approximately one week later, Smith drove a load from USX to EQC without a manifest. Thus, when Smith attempted to deliver his load in January 2009 without a manifest, it was as lead driver, with knowledge that USX, Windmill Environmental's biggest customer, had expressly conditioned

9

its continued business relationship with Windmill Environmental on Windmill Environmental's drivers taking responsibility for having proper manifests.

Finally, Kinley's error was not solely his; Smith's was. Smith acknowledges that other Windmill Environmental employees contributed to the errors in the manifest for the load driven by Kinley on December 5, 2008. In contrast, Smith alone was responsible for the missing manifest on January 5, 2009.

Under all these circumstances, Kinley and Smith are not "directly comparable in all material respects," and, thus, Smith has not shown that he was treated differently from a similarly situated employee outside of the protected class.

Smith also fails to establish a prima facie case of discrimination because he cannot show that he was meeting Windmill Environmental's legitimate expectations. Smith was the "lead driver" for the USX account and was present at the meeting at which USX set forth its expectations regarding the drivers' responsibility for the manifests. Nevertheless, Smith transported a load of hazardous waste from USX in Gary, Indiana, to EQC in Detroit, Michigan, without a manifest, through no one's fault but his own.

Because Smith cannot meet his burden of establishing a prima facie case of discrimination, summary judgment is granted in favor of Windmill Environmental.

However, even if Smith could make out a prima facie case of race discrimination, Windmill Environmental has articulated a legitimate non-discriminatory reason for terminating Smith's employment, and Smith has not shown that this explanation is a pretext for race discrimination. To demonstrate that the employer's stated nondiscriminatory reason for the adverse employment action is pretextual, "the plaintiff must present evidence suggesting that the employer is dissembling."

*O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Id*. To meet this burden, a plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in the [employer's] asserted reason that a reasonable person could find [it] unworthy of credence." *Coleman*, 667 F.3d at 852-53 (internal quotation marks omitted) (quoting *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 791 (7th Cir. 2007)).

As previously discussed, Dykstra testified that Windmill Environmental terminated Smith's employment because Smith endangered Windmill Environmental's relationship with its most important customer by violating an express policy through no one's fault but his own. Smith cannot establish that the reason for his termination had no factual basis; the facts of his termination are supported in large part by his own testimony. In addition, Windmill Environmental replaced him as lead driver with Lewis Brown, an African American. Nor has Smith shown that the proffered reason is insufficient to motivate Windmill Environmental's decision; Smith's transporting of hazardous waste without a manifest jeopardized Windmill Environmental's largest customer account.

Smith argues, without evidentiary or legal support, that an improper or lost manifest constitutes a violation for which a fine is levied by the Department of Transportation. He also argues that the proper or improper handling of a manifest by others does not relieve the driver of his responsibility for the manifest and that, regardless of whether others were involved with handling the manifest, fines are issued against the company and the driver. However, the fines and penalties levied by the Department of Transportation and the factors taken into consideration in doing so do

not alter the express expectations of Windmill Environmental and USX regarding the proper handling of manifests by drivers hauling hazardous waste from USX.

Therefore, even if Smith had been able to demonstrate a prima facie case of discrimination, he cannot show that Windmill Environmental's legitimate, nondiscriminatory reason for terminating his employment is a pretext for race discrimination.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the Motion for Summary Judgment [DE 30]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant Windmill Environmental against Plaintiff Leroy Smith.

All pretrial and trial date(s) are VACATED.

SO ORDERED this 23rd day of March, 2012.

          s/ Paul R. Cherry
          MAGISTRATE JUDGE PAUL R. CHERRY
          UNITED STATE DISTRICT COURT

cc:    All counsel of record
       Leroy Smith, Plaintiff